UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RONALD ANTHONY,<br><br>        Plaintiff,<br><br>        v.<br><br>CHROMALOX, INC.,<br><br>        Defendant. | CAUSE NO.: 2:20-CV-202-TLS-APR |

**OPINION AND ORDER**

The Plaintiff Ronald Anthony filed a Complaint [ECF No. 4] in the Lake County, Indiana, Superior Court on March 30, 2020, bringing products liability claims against the Defendant Chromalox, Inc. The Plaintiff alleges that, while in the course of his employment with ArcelorMittal, he was operating a crane when the Chromalox Type HF Model E portable heater installed in the crane's cab malfunctioned because of a wire failure and suddenly and without warning electrocuted the Plaintiff, causing him permanent injuries. Compl. ¶ 6, ECF No. 4. The Defendant removed the case to this Court on May 20, 2020. ECF No. 1. This matter is now before the Court on the Defendant's Motion to Dismiss [ECF No. 12], which is fully briefed. The Defendant asks the Court to dismiss the Complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim. For the reasons set forth below, the Court grants the motion for lack of personal jurisdiction over the Defendant and transfers this matter to the United States District Court for the Western District of Pennsylvania.

**FACTUAL ALLEGATIONS**

The Plaintiff's Complaint alleges the following. The Defendant was "authorized to operate" and "to manufacture, distribute, sell and do business" in Indiana. Compl. ¶¶ 2–3. The

Defendant "manufactured, distributed, and sold portable blower heaters throughout the United States of America from [its] manufacturing and distribution center located in Ogden, Utah." *Id.* at ¶ 4. ArcelorMittal, the Plaintiff's employer, purchased a portable Chromalox blower heater Type HF "Model E" that was installed into the cab of a crane. *Id.* at ¶ 5. On May 10, 2018, the Plaintiff, in the course of his employment with ArcelorMittal, was operating a crane when the Chromalox Type HF "Model E" portable heater installed in the crane's cab malfunctioned because of a wire failure and suddenly and without warning electrocuted the Plaintiff, causing him serious permanent injuries. *Id.* at ¶ 6; *see also id.* at ¶¶ 7, 8 (referencing the portable heater involved in the incident as a Chromalox Type HF "Model E "portable heater). The Safety Information Bulletin issued by ArcelorMittal for the incident also identifies the portable heater as a Chromalox Type HF "Model E." Pl. Ex. 7, ECF No. 17-7.

In support of its motion, the Defendant offers the declaration of Bruce Barnes, Vice President–Global Professional Services for Chromalox, Inc., who avers the following. *See* Def. Ex. 1, ¶¶ 1–2, ECF No. 13-1. The Defendant is a Delaware corporation with its principal place of business in Pennsylvania. *Id*. at ¶¶ 4–5. The Defendant does not rent or own office space, manufacturing facilities, or any property in Indiana, does not have any employees located in Indiana, and has no bank accounts in Indiana. *Id.* at ¶¶ 6–8. The Defendant does not process orders for portable heaters in Indiana or target Indiana through advertising. *Id.* at ¶ 9. The Defendant does not design, manufacture, or inspect portable heaters in Indiana and does not author instructions or warnings for its portable heaters in Indiana. *Id.* at ¶¶ 10, 11. In contrast with the Plaintiff's allegation in the Complaint, the Defendant is not legally registered in Indiana. *Id.* at ¶ 12. Because the Plaintiff does not know the serial number for the portable heater involved

in this case, the Defendant is unable to identify the portable heater or trace it to any sale, including any sale in Indiana. *Id.* at ¶ 13.

In support of his response, the Plaintiff offers a December 13, 2016 purchase order showing that ArcelorMittal purchased four portable heaters from distributor Gexpro-IH, RD, I/N (Gexpro) with an address in Crown Point, Indiana. Pl. Ex. 1, at 1, ECF No. 17-1. The four heaters are identified as Chromalox Heaters, 240VDC 3KW Single (949779), "HF 303DG DC," to be delivered to ArcelorMittal in East Chicago, Indiana, and marked for the ore bridge. *Id.* Gexpro is a self-described leading electrical distribution company with a sales office in Crown Point, Indiana. Pl. Ex. 2, ECF No. 17-2. Gexpro, through its website, sells thirteen varieties of the Defendant's heaters. Pl. Ex. 3, ECF No. 17-3. A one-page description titled "Industrial Air Heaters" describes the "HF Portable Blower Heater" as ideal for heating small areas in industrial environments and as available in DC ratings for use in crane cabs. Pl. Ex. 4, ECF No. 17-4. This description lists ordering information for ten different models; relevant to this motion, three of the models are "HF-303E," "HF-403E," and "HF-303DG." *Id.* The Plaintiff notes that it appears that anyone can order a portable heater from the Defendant's website, attaching the Defendant's online catalog page for the Portable Blower Heater. Pl. Ex. 5, ECF No. 17-5.

In a second declaration, Mr. Barnes avers that Chromalox "Model E" portable heaters are only manufactured and sold under product numbers "HF-303E" and "HF-403E" and not under product number "HF-303DG." Def. Ex. 5, ¶ 6, ECF No. 18-1. He states that Chromalox "Model E" portable heaters and Chromalox "Model DG" portable heaters are "completely different products," even though they both have an "HF" prefix in their respective model numbers. *Id.* at ¶ 5. More specifically, he avers that "the purchase order submitted by Plaintiff does not relate to the product that Plaintiff contends is at issue in this case." *Id.* at ¶ 7.

**MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). If the defendant provides an affidavit to show the lack of jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research*, 338 F.3d at 783, 783 n.13. In determining whether personal jurisdiction exists, the court "take[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing *Purdue Research*, 338 F.3d at 782). When the court does not conduct an evidentiary hearing on the question of personal jurisdiction, "the plaintiff 'need only make out a *prima facia* case of personal jurisdiction.'" *Purdue Research*, 338 F.3d at 782 (citation omitted).

**ANALYSIS**

The Defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Research*, 338 F.3d at 779 (citation omitted). Indiana's long-arm statute extends to the limits of federal due process. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967

(Ind. 2006)). The Due Process Clause of the Fourteenth Amendment authorizes personal jurisdiction over an out-of-state defendant when that defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "The primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779 (2017) (citing *Walden v. Fiore*, 571 U.S. 277, 283–86 (2014)). When considering the variety of interests at issue in determining whether personal jurisdiction is present, "the 'primary concern' is 'the burden on the defendant.'" *Id*. at 1780 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Personal jurisdiction may be general or specific. *Id.* at 1779–80 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Defendant argues that the Court has neither general nor specific jurisdiction over it, and the Plaintiff appears to advocate only for specific jurisdiction. The Court considers whether the Plaintiff has established a prima facie case of either general or personal jurisdiction in turn.

**A.  General Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (citing *Int'l Shoe*, 326 U.S. at 317); *see Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (quoting *Goodyear*, 564 U.S. at 919). This condition is satisfied by the corporation's place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. "[I]n an 'exceptional case,' a corporate defendant's operations in another forum 'may be so

substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19).

Here, the Defendant is incorporated in Delaware and has its principal place of business in Pennsylvania. The Plaintiff has offered no evidence to rebut the statements in Mr. Barnes' declaration regarding the Defendant's complete lack of operations in Indiana and does not appear to argue that the Defendant is "at home" in Indiana for purposes of general jurisdiction. The Court finds that it does not have general personal jurisdiction over the Defendant.

**B.     Specific Jurisdiction**

A court has specific jurisdiction over a defendant only if the "defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284. "The inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quoting *Walden*, 571 U.S. at 283–84). Importantly, "'the relationship must arise out of contacts that the defendant *himself* creates with the forum State,' and 'the defendant's contacts with the forum State itself.'" *Id.* at 552–53 (quoting *Walden*, 571 U.S. at 284); *see Advanced Tactical*, 751 F.3d at 801. Thus, specific jurisdiction is appropriate when "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Tamburo*, 601 F.3d at 702). "The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Tamburo*, 601 F.3d at 702 (citing *Int'l Shoe*, 326 U.S. at

316). In this case, the facts of record do not support the Court's exercise of specific personal jurisdiction over the Defendant.

First, the Plaintiff has offered no evidence that the Defendant purposefully directed its activity toward Indiana or purposefully availed itself of the privilege of conducting business in the state. Although the Complaint alleges that the Defendant is "authorized to operate" and "to manufacture, distribute, sell and do business" in Indiana, the Defendant has submitted the declaration of Mr. Barnes contradicting these allegations. Mr. Barnes avers that the Defendant is not legally registered in Indiana; does not rent or own space, manufacturing facilities, or any property in Indiana; has no employees in Indiana; and has no bank accounts in Indiana. The Defendant does not target Indiana through advertising, process orders for portable heaters in Indiana, design or manufacture its portable heaters in Indiana, or author instructions or warnings for its portable heaters in Indiana. The Plaintiff has not refuted this evidence.

Rather, the Plaintiff relies on the "stream of commerce" theory to satisfy purposeful availment. In *World-Wide Volkswagen*, the Supreme Court first articulated the stream of commerce theory, which provides that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." 444 U.S. at 297–98. The Court explained that,

> if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* at 297; *see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021) (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

The Seventh Circuit "is among those that apply the stream of commerce theory in products liability cases." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575–76 (7th Cir. 2020) ("In the absence of intervening guidance from the Supreme Court, we have reasoned that the Court adopted the stream of commerce theory in *World-Wide Volkswagen* and has not overruled it since." (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946–47 (7th Cir. 1992); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550, 550 n.2 (7th Cir. 2004))). "In the context of products liability, downstream sales to consumers can support personal jurisdiction because they bear on 'the relationship among the defendant, the forum, and the *litigation*.'" *Id.* at 576 (quoting *Walden*, 571 U.S. at 283–84). In such a suit,

> the underlying litigation alleges the development of a product that harms consumers. Thus, *when a defendant takes steps to reach consumers in a forum state*, it has created a relationship with the forum state that has special relevance to the litigation at issue. The stream of commerce theory contemplates that a defendant's product may go through middlemen before reaching consumers, but the point of consumer sale remains relevant to the relationship between the defendant, the forum, and the consumer-injury litigation.

*Id.* (emphasis added).

In this case, the Plaintiff contends that the Defendant sold the portable heater at issue to distributor Gexpro, who then distributed it in Indiana through its Crown Point, Indiana office. The Plaintiff contends that the sale was not an isolated occurrence but arose from the Defendant's efforts to directly or indirectly market the portable heater in Indiana through the stream of commerce. In support, the Plaintiff cites only a purchase order showing that ArcelorMittal purchased four Chromalox "Model DG" portable heaters from distributor Gexpro in Crown Point, Indiana. However, as argued by the Defendant, the Plaintiff has offered no evidence of any relationship between the Defendant and distributor Gexpro, that the Defendant

8

knew or expected that Gexpro would sell its products in Indiana, or even that the specific heater at issue in this case was sold by Gexpro to ArcelorMittal in Indiana.

Indeed, the purchase order does not point to any forum-related conduct by the Defendant itself—the purchase order is between third-party distributor Gexpro and ArcelorMittal. The Plaintiff has offered no information regarding *any* relationship between the Defendant and Gexpro that might show the Defendant's relationship, if any, with Indiana. *See, e.g.*, *Bristol-Myers Squibb*, 137 S. Ct. at 1783 ("[T]he bare fact that [the defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State."); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877–78, 882–83, 886–87 (2011) (holding that the placement of goods into the stream of commerce through a distributor, without more, was insufficient to establish that the defendant purposefully directed his activities at the forum). Again, the forum-related contacts must result from the Defendant's actions as opposed to the actions of third parties, and the Plaintiff has only offered forum-related contacts of distributor Gexpro. *See Advanced Tactical*, 751 F.3d at 801 (quoting *Walden*, 571 U.S. at 284); *Jennings*, 383 F.3d at 551 ("It is possible that the 'unilateral activity' of a third party, rather than the defendant's distribution scheme, landed the jack in Indiana, which is the very scenario that doomed the plaintiffs' case in *World–Wide Volkswagen*.").

In addition, the Plaintiff has offered no evidence showing that the Defendant intended to target Indiana as a market through a distributor or that the Defendant had knowledge or an expectation that its product would be distributed in Indiana. *See Dehmlow*, 963 F.2d at 947 (finding personal jurisdiction in a products liability suit when the defendant sold fireworks to a middleman "with the knowledge that its fireworks would reach Illinois consumers in the stream of commerce"); *see also Zimmer, Inc. v. Zimmer Elektromedizin GmbH*, No. 3:19-CV-405, 2022

WL 1154835, at *8 (N.D. Ind. Apr. 18, 2022) (recognizing that, although it may be true that the manufacturer expected that its distributor would sell its products nationally, including in Indiana, "no evidence exists of it on this record"). And, as discussed below, there is no evidence that the portable heater that allegedly caused the Plaintiff's injuries was even sold in Indiana. Therefore, the Plaintiff cannot rely on the stream of commerce theory to establish purposeful availment.

Finally, the Plaintiff asserts, without citation to law, that "[a]n additional argument can also be made that the defendant has purposely availed itself to this state by the use of the internet and sales of the Chromalox blower heaters over the defendant's website." Pl. Resp. 8, ECF No. 17. However, in *Advanced Tactical*, the Seventh Circuit explained that "[t]he interactivity of a website is . . . a poor proxy for adequate in-state contacts." 751 F.3d at 803. Rather, the "inquiry boils down to [whether the defendant] purposefully exploited the [Indiana] market beyond simply operating an interactive website." *Id*. at 802; *see Curry*, 949 F.3d at 398 (explaining that the Seventh Circuit has consistently declined "to fashion a special jurisdictional test for Internet-based cases," finding the traditional due process inquiry sufficient (quoting *Tamburo*, 601 F.3d at 703 n.7; citing *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 759 (7th Cir. 2010))).

Here, the Plaintiff offers no evidence that the Defendant's website directed any sales or marketing activity to Indiana, and Mr. Barnes' declaration states that the Defendant does not target Indiana through advertising. Nor does the Plaintiff offer evidence of any internet sales in Indiana through the Defendant's website. Moreover, the Plaintiff does not allege that the portable heater at issue in this case was purchased directly from the Defendant's website. *Compare Curry*, 949 F.3d at 399 (finding sufficient online contacts), *and Hemi Grp.*, 622 F.3d at 755, 757–58 (same), *with Matlin v. Spin Master Corp.*, 921 F.3d 701, 706–07 (7th Cir. 2019) (finding insufficient online contacts), *and Advanced Tactical*, 751 F.3d at 803 (same). *See also Zimmer*,

2022 WL 1154835, at *4 ("[U]nlike most cases in which such a website has proven material to the analysis of minimum contacts, no evidence today shows that any Indiana sale of suit-related product occurred through this website or that the company specifically targeted Indiana consumers through it.").

Accordingly, the Plaintiff has not demonstrated any purposeful connection between the Defendant and Indiana to satisfy the purposeful availment requirement of specific jurisdiction.

Second, although the Plaintiff was injured in Indiana allegedly by the Defendant's product, neither the purchase order nor any other evidence establishes that the Plaintiff's injury arose out of or was related to the Defendant's lawsuit-related contacts with Indiana. *See Ford Motor Co.*, 141 S. Ct. at 1026–27 (recognizing that the "most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum'" (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1780)); *Advanced Tactical*, 751 F.3d at 801 ("For a State to exercise jurisdiction consistent with due process, the Defendant's *suit-related* conduct must create a substantial connection with the forum State." (quoting *Walden*, 571 U.S. at 284)). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb*, 137 S. Ct. at 1780. "The mere fact that defendant's conduct affected [a plaintiff] with connections to the forum State does not suffice to authorize jurisdiction." *Advanced Tactical*, 751 F.3d at 801 (internal quotation marks and alterations omitted) (quoting *Walden*, 571 U.S. at 291).

Citing the December 13, 2016 purchase order, the Plaintiff asserts that the Defendant's portable heater at issue in this case was sold by distributor Gexpro in Indiana. However, both the Complaint in this case and the Safety Information Bulletin issued by ArcelorMittal for the incident identify the portable heater as a Chromalox Type HF "Model E." In contrast, the

11

December 13, 2016 purchase order was for four Chromalox Type HF "Model DG" portable heaters. The Defendant offers Mr. Barnes' unrefuted declaration that "Model E" and "Model DG" portable heaters are "completely different products" manufactured under different product numbers and that the December 13, 2016 purchase order does not reflect the heater model that the Plaintiff contends is at issue in this litigation. The Plaintiff has not offered any specific identifying information regarding the portable heater to determine how or why that heater was in Indiana. *See Goodyear*, 564 U.S. at 930 n. 6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *Ormsby v. Nexus RVs, LLC*, No. 3:19-CV-626, 2020 WL 2041754, at *2 (N.D. Ind. Apr. 28, 2020) ("If a plaintiff fails to link the defendant's contacts with the forum state to the cause of action, specific jurisdiction isn't proper."). The Plaintiff has failed to link his injury to any purposeful contact of Defendant with Indiana. Thus, the Court does not have specific personal jurisdiction over the Defendant.

**C.      Lack of Personal Jurisdiction and Transfer of Venue**

Accordingly, the Court finds that it lacks personal jurisdiction over the Defendant. The Court grants the Defendant's motion on that basis and denies as moot the Defendant's alternate motion to dismiss for failure to state a claim. This leaves the Plaintiff's request that, if the Court finds that it lacks personal jurisdiction over the Defendant, the Court transfer this case to either the United States District Court for the Western District of Pennsylvania, which is the Defendant's principal place of business, or the United States District Court for the District of Utah, the location where the portable heater was allegedly manufactured. The Defendants asks for dismissal of the Complaint but agrees that it is subject to the general jurisdiction of the United States District Court for the Western District of Pennsylvania. In the interests of justice,

the Court transfers this case to the United States District Court for the Western District of Pennsylvania given the amount of time the case has been pending such that the statute of limitations may be an impediment to the Plaintiff refiling his claims. *See* 28 U.S.C. § 1631 (providing that, if a court finds that it does not have jurisdiction, the court must, if it is in the interest of justice, transfer the case to any other court in which the action could have been brought at the time it was filed).[1]

## CONCLUSION

Based on the foregoing, the Court hereby GRANTS the Defendant's Motion to Dismiss [ECF No. 12] with relief different than requested and TRANSFERS this case to the United States District Court for the Western District of Pennsylvania.

SO ORDERED on August 1, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[1] Although the Seventh Circuit Court of Appeals has not determined whether § 1631 applies to lack of personal jurisdiction in addition to lack of subject matter jurisdiction, *see Carpenter-Lenski v. Ramsey*, 210 F.3d 374 (7th Cir. 2000), several district courts within the circuit have applied § 1631 to transfer rather than dismiss when the court lacks personal jurisdiction, *see Meherg v. Skrivan*, No. 18 C 4696, 2020 WL 374684, at *5 (N.D. Ill. Jan. 22, 2020) (citing cases); *but see Murray v. Cirrus Design Corp.*, 339 F. Supp. 3d 783, 789 (N.D. Ill. 2018) (recognizing that the Seventh Circuit has not resolved the question).